**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VERSAI MANAGEMENT CORPORATION, ET AL.** | **CIVIL ACTION** |
| | **No. 11-2717** |
| **VERSUS** | |
| | **SECTION I** |
| **PROGRESSIVE CASUALTY INSURANCE COMPANY** | |

<u>**ORDER AND REASONS**</u>

Before the Court is a motion[1] to dismiss filed by defendant, Progressive Casualty Insurance Company ("Progressive"). Plaintiffs, Versai Management Corporation ("Versai") and Bank of America have filed an opposition.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*BACKGROUND*

Versai owns and operates an apartment complex located in New Orleans, Louisiana that sustained damage during Hurricane Katrina.[3] Versai hired a public adjuster, Mark Carrier, to assist with the claims it submitted to its property and casualty insurers, Clarendon America Insurance Company ("Clarendon") and OneBeacon Insurance Company ("OneBeacon").[4] Versai alleges that Carrier held himself out as an experienced and knowledgeable public adjuster who could obtain the maximum amounts recoverable from Versai's insurers without the need for litigation.[5] Carrier performed his work for Versai on behalf of Recovery Management, Ltd. ("Recovery").[6]

---

[1] R. Doc. No. 25.
[2] R. Doc. No. 30.
[3] R. Doc. No. 16, ¶¶ 6-7.
[4] *Id.* at ¶¶ 8-9.
[5] *Id.* at ¶ 9.
[6] *Id.* at ¶¶ 8-9.

In December 2007, Clarendon and OneBeacon each issued a check in the amount of $255,498.00 made payable to Versai, First Trust Bank, Fannie Mae, and Recovery.[7]  The check issued by Clarendon was drawn on an account at Chase Manhattan Bank ("Chase Manhattan").[8]  The check issued by OneBeacon was drawn on an account at Bank of America.[9]  The insurance adjuster hired by Clarendon and OneBeacon forwarded the checks directly to Carrier.[10]  Upon receipt, Carrier forged the endorsements of Versai, First Trust Bank, and Fannie Mae and presented the checks for deposit into his own account at Citizens First Bancorp, Inc. ("Citizens"), a Michigan-chartered savings bank.[11]

On December 12, 2008, Versai sued Citizens, Chase Manhattan, and Bank of America in the U.S. District Court for the Eastern District of Michigan to recover the amounts Carrier had unlawfully deposited into his Citizens account.[12]  Bank of America and Chase Manhattan tendered their defenses to Citizens pursuant to the Uniform Commercial Code.[13]  Progressive accepted the defense of Citizens, Chase Manhattan, and Bank of America as it had issued a financial institution bond ("the Bond") affording insurance coverage to Citizens for such claims.[14]  Although plaintiffs allege that Citizens initially acknowledged its liability to Versai informally, they contend that when Progressive received notice of the claims, it responded by hiring a new attorney, and by proceeding to mount a defense based on a frivolous assertion that Versai owed Carrier $512,000.[15]

---

[7] *Id.* at ¶¶ 10, 12.
[8] *Id.* at ¶10.
[9] *Id.* at ¶ 12.
[10] *Id.* at ¶¶ 11, 13.
[11] *Id.* at ¶¶ 14-16.
[12] *Id.* at ¶ 24.
[13] *Id.* at ¶ 25.
[14] *Id.* at ¶¶ 26-27.
[15] *Id.* at ¶¶ 22-23; R. Doc. No. 30, p. 2.

On April 5, 2010, the U.S. District Court in Michigan rejected Progressive's defense and granted summary judgment in favor of Versai.[16] Shortly thereafter, however, Citizens was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") was substituted for Citizens as the appointed receiver for the failed bank.[17] As a result, when Versai and Bank of America demanded that Progressive pay the judgment, Progressive claimed that it was no longer obligated to make payment on the claim since its insured had gone into receivership.[18] Versai subsequently entered into a settlement agreement with Bank of America and Chase Manhattan that resulted in payment of a portion of the judgment.[19]

On September 23, 2011, Versai and Bank of America filed this lawsuit in Orleans Parish Civil District Court alleging that Progressive knew that there was no viable good faith defense to Versai's cause of action and that it purposefully delayed the proceedings in Michigan until such time as the FDIC took over Citizens as receiver.[20] Versai seeks damages in the amount of the unpaid portion of the judgment together with attorney's fees, costs, and penalties pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann § 22:1269, *et seq.*[21] Bank of America seeks similar damages from Progressive with respect to the amount of the judgment it paid to Versai in settlement. Bank of America also alleges that it suffered damages when Progressive and its agent, Craig Horn, breached a fiduciary duty, as set forth above, that they owed to Bank of America "as an insured, additional insured and/or *de facto* insured."[22] Both entities further claim

---

[16] R. Doc. No. 16, ¶ 30.
[17] *Id.* at ¶ 31.
[18] *Id.* at ¶¶ 34-42
[19] *Id.* at ¶¶ 38, 40.
[20] R. Doc. No. 1-1.
[21] R. Doc. No. 16, ¶¶ 45-49.
[22] *Id.* at ¶¶ 49-50.

the right to pursue an action against Progressive under the Michigan Uniform Trade Practices Act, M.C.L. § 500.2001, *et seq.*[23]

On January 11, 2012, Progressive timely filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[24] Progressive contends that Versai and Bank of America have no right to maintain a direct action against Progressive under the terms of the bond and that a direct action is not authorized in this case by either Michigan or Louisiana law.[25] Progressive further contends that the complaint does not allege any basis for awarding breach of fiduciary duty damages in favor of Bank of America as an insured, additional insured, or as a "*de facto* insured."[26] Finally, Progressive argues that Versai and Bank of America failed to state a claim under the Michigan Uniform Trade Practices Act, and that they are not entitled to attorney's fees, penalties, or bad faith damages.[27]

## *LAW*

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007); *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzalez v. Kay:*

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

---

[23] *Id.* at ¶¶ 51-55.
[24] R. Doc. No. 25.
[25] *Id.*
[26] *Id.*
[27] *Id.*

(2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

"Generally, in deciding a motion to dismiss for failure to state a claim, if 'matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Fed. R. Civ. P. 12(b)). Although the insurance policy issued by Progressive to Citizens would normally be treated as a matter outside the pleadings, it was attached to plaintiffs' original petition for damages, plaintiffs referred to the policy in their complaint, defendants cited the policy in their motion to dismiss, and it is central to plaintiffs' claims. Accordingly, this Court may consider the insurance policy without treating the motion as one for summary judgment. *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (citing *Causey v. Sewell*

*Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Collins v. Morgan Stanley Dean Whitter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## *DISCUSSION*

## I. The Louisiana Direct Action Statute

Plaintiffs allege in counts I and II of their amended complaint that Progressive is liable to Versai and Bank of America pursuant to the Louisiana Direct Action Statute ("LDAS") for the amount of the judgment entered against Citizens.[28]  Versai and Bank of America contend that Progressive committed itself to pay the full amount of the judgment entered against its insured by assuming the defense of Citizens and Bank of America.[29]  Although neither Versai nor Bank of America were parties to the insurance contract, and the Bond expressly contained a no action clause that disclaimed liability to third-parties such as plaintiffs,[30] they assert that the LDAS authorizes their direct action against Progressive.

---

[28] R. Doc. No. 16, ¶¶ 45-49.

[29] Plaintiffs rely on the following language of the Bond for the proposition that a loss has occurred for which Progressive is responsible:

> If the Underwriter elects to defend the insured, in whole or in part, any judgment against the insured on those counts or causes of action which the Underwriter defended on behalf of the inured or any settlement in which the Underwriter participates and all attorney's fees, cost and expenses incurred by the Underwriter in the defense of the litigation shall be a loss covered by this bond.

R. Doc. No. 1-4, p. 11.

[30] Conditions and Limitations, Section 5(f) of the Bond provides as follows:

> This bond affords coverage only in favor of the Insured.  No suit, action or legal proceedings shall be brought hereunder by any one other than the first named Insured.

Conditions and Limitations, Section 12 of the Bond further provides as follows:

> This bond shall apply to loss of Property (1) owned by the Insured, (2) held by the Insured in any capacity, or (3) owned and held by someone else under circumstances which make the Insured responsible for the Property prior to the occurrence of the loss.  This bond shall be for the sole use and benefit of the Insured named in the declarations.

Progressive contends that counts I and II must be dismissed because the LDAS does not apply in this case. The LDAS provides as follows:

> No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy . . . .

La. Rev. Stat. Ann. § 22:1269. "[W]hen the statute is applicable and authorizes a direct suit against a tortfeasor's insurer, the statute is read into and becomes a part of a policy written pursuant thereto, even though the policy does not contain the language required by the statute, or contains language prohibited by the statute." *In re Combustion, Inc.*, 960 F. Supp. 1056, 1061-62 (W.D. La. 1997) (quoting *Quinlan v. Liberty Bank & Trust Co.*, 575 So.2d 336, 352 (La. 1990)). However, the right of direct action exists only if the policy was "written or delivered in the state of Louisiana" or "the accident or injury occurred within the state of Louisiana." *Webb v. Zurich Ins. Co.*, 205 So.2d 398, 406 (La. 1967); *Esteve v. Allstate Ins. Co.*, 343 So. 2d 353, 354-55 (La. Ct. App. 4th Cir. 1977).

Plaintiffs do not allege that the Bond was either written or delivered in Louisiana and they acknowledge that the acts giving rise to their injury occurred in Michigan. The Bond was issued by Progressive to Citizens, a Michigan-chartered bank located in Port Huron, Michigan. Carrier deposited the fraudulently endorsed checks into his account at Citizens in Port Huron. The resulting litigation over the wrongful payment by Citizens, as well as the allegedly unlawful actions by Progressive in maintaining a defense to that action, occurred in proceedings before the U.S. District Court for the Eastern District of Michigan. Although plaintiffs argue that Versai suffered an injury in Louisiana by virtue of the fact that it is a citizen of Louisiana, the harmful impact of an out-of-state injury to a Louisiana resident is "insufficient to satisfy the LDAS." *AG*

*1824 Marine Ins. v. United Kingdom Mutual P&I Club*, 157 F.3d 903, 1998 WL 611748, at *2

(5th Cir. 1998) ("[T]o construe the LDAS to apply where an impact from the injury is felt in

Louisiana would be inconsistent with the decisions of the courts of Louisiana not to extend the

LDAS to the bounds of the Constitution."); *see also Hunter Douglas Metals, Inc. v. New Bay*

*Fin. Shipping Co.*, No. 88-3470, 1989 WL 237754, at *1 (E.D. La. Dec. 21, 1989) (Schwartz, J.)

("While the injury clearly had an impact in Louisiana, it did not arise in Louisiana."); *Morse v.*

*Hartford Cas. Ins. Co.*, 301 So.2d 741, 744 (La. Ct. App. 3d. Cir. 1974) (holding that an out-of-

state injury to a Louisiana resident does not satisfy the LDAS). Because the policy at issue was

written and delivered outside Louisiana, and the injury occurred outside Louisiana, the LDAS

does not authorize plaintiffs' direct action on the Bond.[31]   Therefore, Counts I and II must be

dismissed for failure to state a claim under the LDAS.

## II.  Breach of Fiduciary Duty

Plaintiffs allege in count III of their amended complaint that Progressive is liable for tort

damages based on their assertion that "Progressive and its agent, Craig Horn, breached the

fiduciary duty it owed to Bank of America as an insured, additional insured and/or *de facto*

insured."  Progressive argues that the allegations in count III must be dismissed because Bank of

America was neither an insured nor an additional insured with respect to the insurance policy it

issued to Citizens.  Progressive also argues that Bank of America cites no authority supporting its

claims for breach of fiduciary duty as a "*de facto* insured" and that the relationship between

insurer and insured is not that of a fiduciary under Michigan law.  *See Crossley v. Allstate Ins.*

*Co.*, 400 N.W.2d 625, 627 (Mich. Ct. App. 1986).

---

[31] As the LDAS does not apply for the reason set forth herein, the Court does address Progressive's alternative
arguments that the LDAS does not apply to this insurance policy because (1) it is an indemnity policy, and (2)
Michigan law applies and it does not provide for direct actions such as this.

Bank of America responds in part that the facts alleged in the complaint sufficiently state a claim that Progressive unlawfully participated in the violation of a fiduciary duty owed to Bank of America by Horn, the attorney allegedly hired by Progressive to represent Bank of America in the lawsuit filed by Versai. "Michigan law does recognize the prospect of liability by one who joins in a conspiracy or enterprise with another who breaches a fiduciary duty to third party." *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1346 (E.D. Mich. 2011) (citing *In re Goldman Estate*, 601 N.W.2d 126, 129 (1999)). To withstand a motion to dismiss, a plaintiff asserting a claim for aiding and abetting a breach of fiduciary duty must allege that (1) some person or entity breached a fiduciary duty owed to the plaintiff; (2) the defendant actually knew of the breach; and (3) the defendant gave the primary tortfeasor substantial assistance that proximately caused the plaintiff's loss. *Fremont*, 811 F. Supp. 2d at 1347 (citing *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F.Supp.2d 875, 897 (W.D. Mich. 2010); Restatement Torts 2d, § 876(b)). "[T]he substantial assistance must 'further the fraud itself, and not merely constitute general aid to the tortfeasor.' " *Fremont*, 811 F. Supp. 2d at 1347 (citing *El Camino*, 722 F. Supp 2d at 910).

Construing all factual allegations in the light most favorable to plaintiffs, the Court finds that Bank of America has sufficiently alleged that Progressive is liable under Michigan law for aiding and abetting a breach of fiduciary duty. Horn clearly owed a fiduciary duty to Bank of America as its attorney. *See Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761 (Mich. 1981) (recognizing the automatic fiduciary obligation owed from attorney to client). Horn is alleged to have breached his fiduciary duty by mounting a bad faith defense in the action that was against the interests of Bank of America. The allegations are that Progressive actually knew about that breach of fiduciary duty and that it substantially assisted in the conduct which

resulted in Bank of America's inability to recover from Citizens. Accordingly, the Court finds

that Bank of America has sufficiently stated a claim against Progressive for aiding and abetting a

breach of fiduciary duty under Michigan law.

### III. The Michigan Uniform Trade Practices Act

Plaintiffs allege in counts IV and V that they are "entitled to pursue any claims they may

have" against Progressive under the Uniform Trade Practices Act ("UTPA"). Plaintiffs argue

that they are entitled to enforce the insurance contract between Progressive and Citizens under

the third-party beneficiary statute, M.C.L. § 600.1405, and to obtain damages pursuant to the

UTPA, M.C.L § 500.2001, *et seq.* Progressive responds that these counts must be dismissed

because the Michigan third-party beneficiary statute does not confer third-party beneficiary

status on an insured's tort victims and the UTPA does not provide a private cause of action for

such claims.

The Court agrees that plaintiffs are not third-party beneficiaries with respect to the

insurance policy issued to Citizens. "A person is a third-party beneficiary of a contract only

when that contract establishes that a promisor has undertaken a promise directly to or for that

person." *Schmalfeldt v. North Pointe Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003). "[A] court

should look no further than the form and meaning of the contract itself to determine whether a

party is an intended third-party beneficiary within the meaning of 1405." *Id.* "Only intended

beneficiaries, not incidental beneficiaries, may enforce a contract under 1405." *Id.* (citing

*Koenig v. South Haven*, 597 N.W.2d 99, 105 (Mich. 1999)). The insurance policy in this case

does not designate Versai or Bank of America as intended third-party beneficiaries. The policy

provides that it affords coverage only "for the sole use and benefit of the Insured named in the

Declarations."[32]  As plaintiffs are incidental beneficiaries under the insurance policy at best, they cannot rely on the third-party beneficiary statute to obtain benefits under this insurance policy.

As for their claims under the UTPA, "The Michigan courts—and federal courts applying Michigan law . . . have held that the UTPA does not create a private cause of action for bad faith breach of an insurance contract." *Jennings v. Nationwide Mut. Fire Ins. Co.*, No. 11-14439, 2011 WL 5525951, at *2  (E.D. Mich. Nov. 14, 2011)  (citing *Makki v. Farmers New World Life Ins. Co.*, 49 Fed. App'x 36, 41 (6th Cir. 2002)).  Although third-party claimants may assert a private cause of action to recover the interest penalty set forth in M.C.L. § 500.2006, *see Barker v. Underwriters at Lloyd's, London*, 564 F. Supp 352, 354-55 (E.D. Mich 1983), private parties may not pursue a cause of action in tort to recover damages based on violations of the interest penalty statute.  *See Young v. Mich. Mut. Ins. Co.*, 362 N.W.2d 844, 846-47 (Mich. Ct. App. 1984) (holding that no private cause of action exists in tort for a violation of the UTPA); *Crossley v. Allstate Ins. Co.*, 400 N.W.2d 625, 627 (Mich. Ct. App. 1986); *Burns v. Unum Group*, No. 10-11957,  2010 WL 5173806, at *5 (E.D. Mich. Dec. 15, 2010) ("An insured may not assert a separate claim for damages in addition to the penalty interest provided for by the UTPA.").

In this case, plaintiffs have made clear that their claims against Progressive sound in tort and are based on Progressive's alleged unlawful conduct in delaying the legal proceedings.  As Michigan law does not afford a private cause of action in tort for violations of M.C.L. § 500.2006, or otherwise pursuant to the UTPA, the Court finds that counts IV and V must be dismissed for failure to state a claim upon which relief can be granted.

### CONCLUSION

For the foregoing reasons,

---

[32] R. Doc. No. 1-4, p. 22.

**IT IS ORDERED** that the motion to dismiss counts I and II is **GRANTED** and plaintiffs' claims under the Louisiana Direct Action Statute are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to dismiss Bank of America's claim for aiding and abetting a breach of fiduciary duty as set forth in count III is **DENIED.**

**IT IS FURTHER ORDERED** that the motion to dismiss counts IV and V is **GRANTED** and plaintiffs' claims under the Michigan Uniform Trade Practices Act are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, April 2, 2012.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**